# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

LOUKISHA WILSON,

                          Plaintiff,


-vs-                                                Case No.   6:10-cv-1663-Orl-22GJK


SPRINT/UNITED MANAGEMENT
COMPANY,

                          Defendant.
_____

## ORDER

## I.  Introduction

This cause comes before the Court for consideration of Plaintiff Loukisha Wilson's

Corrected Motion to Amend Complaint (Doc. 32) and Defendant Sprint/United Management

Company's response thereto (Doc. 37).[1]   After carefully considering the Corrected Motion, the

Court determines that the motion must be denied insofar as it seeks leave to file Wilson's proposed

Second Amended Complaint.   As discussed in greater detail below, amendment based on the

allegations of the proposed Second Amendment Complaint would be futile.   Nevertheless, the

Court will afford Wilson one final opportunity to attempt to plausibly allege that she filed a charge

of discrimination with the Equal Employment Opportunity Commission (EEOC) as a condition

---

[1] Sprint stated in its separately-filed Motion to Dismiss Complaint that Wilson named the wrong entity as the defendant in both her Complaint and Amended Complaint.   In both pleadings, Wilson referred to her former employer as "Sprint Nextel Corporation."   (Doc. 1 at 1; Doc. 5 at 1.)   Sprint contends the actual employer was "Sprint/United Management Company."   (Doc. 13 at n.1.)   In the body of the proposed Second Amended Complaint, Wilson refers to Sprint as "Sprint/United Management Company."   (Doc. 32-1 ¶ 4.)   However, the caption in the proposed Second Amended Complaint still refers to Sprint as "Sprint Nextel Corporation."   (*Id.* at 1.)   Since Wilson has not controverted Sprint's representation regarding the correct name of Wilson's employer, the Clerk will be directed to correct the misnomer on the docket sheet and counsel shall henceforth refer to the Defendant as "Sprint/United Management Company."

precedent to bringing this lawsuit, if she can do so consistent with the requirements of Fed. R. Civ. P. 11.

## II.   Background and Procedural History

Wilson filed her Complaint against Sprint on November 9, 2010.   (Doc. 1 at 1.)   Wilson then filed an Amended Complaint against Sprint on December 21, 2010, asserting wrongful termination and sexual harassment.   (Doc. 5 at 2.)   Wilson was proceeding as a pro se litigant when she filed both pleadings.   On February 23, 2011, Sprint filed a motion to dismiss for lack of subject matter jurisdiction and for failing to state a cognizable claim.   (Doc. 13 at 1-2.)   On April 29, 2011, after hiring an attorney, Wilson filed a response in opposition to Sprint's Motion to Dismiss Complaint along with a Motion to Amend/Correct Amended Complaint.   (Docs. 25 & 26.)

On May 11, 2011, Wilson filed a Corrected Motion to Amend Complaint and attached a proposed Second Amended Complaint.[2]   (Doc. 32 & 32-1.)   In the proposed Second Amended Complaint, Wilson seeks a declaratory judgment that Sprint violated Wilson's rights under Title VII; a permanent injunction enjoining Sprint from continuing to violate Title VII; an injunction ordering Sprint not to engage in gender discrimination, sexual harassment and retaliation, and requiring Sprint to establish written policies concerning discriminatory conduct; an order requiring Sprint to make Wilson whole by awarding Wilson back pay (plus interest) and compensatory, punitive, liquidated, and/or nominal damages; and any other relief that may be required, including an award of costs, attorneys' fees, and expenses.[3]   (Doc. 32-1 § VII, ¶¶ 1-5.)

---

[2]  The second Motion to Amend corrected Wilson's failure to comply with Local Rule 3.01(g).

[3]  In the proposed Second Amended Complaint, Wilson states that the claim is being brought under "Title VII of 'The Civil Rights Act of 1964,' 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991."   (Doc. 32-1 ¶ 1.)

On May 25, 2011, Sprint filed a response in opposition to Wilson's Corrected Motion to Amend Complaint, claiming that allowing Wilson to amend would be futile. (Doc. 37 at 1-2.) Specifically, Sprint is alleging that Wilson did not exhaust her administrative remedies prior to bringing suit and that her claims are time-barred since she failed to file an EEOC charge by December 15, 2010.   (*Id.* at 5-6.)

## II.   Factual Background[4]

Wilson is a former employee of Sprint, having worked for Sprint in its Altamonte Springs offices.   (Doc. 32-1 ¶ 3.)   After winning a trip to the Pro Bowl through the company, Wilson alleges that her supervisor (Antoino Hardiman,[5] an employee of Sprint) asked her to take him along to the game and have sex with him during the trip.   (*Id.* ¶¶ 6, 8.)   Wilson refused those requests.   (*Id.* at ¶ 8.)   The supervisor made sexual advances towards Wilson and directed lewd comments at her.   (*Id.* ¶¶ 7-8.)

At some point, Wilson contacted Sprint's Ethics Hotline concerning the advances; however, no corrective action was taken against Wilson's supervisor.   (*Id.* ¶ 8.)   On February 18, 2010, approximately two weeks after returning from the game, Wilson was terminated.   (*Id.* ¶ 9.) On February 26, 2010, following her termination, Wilson received a "taunting" Facebook message from her former supervisor.   (*Id.* ¶ 10.)

According to Wilson, the reason given by Sprint for her firing was her involvement in an incident involving a downward adjustment on a customer's bill.   (*Id.* ¶ 9.)   Wilson's supervisor

---

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.
[4] The facts set forth herein are taken from Wilson's proposed Second Amended Complaint and are accepted as true for present purposes.   (Doc. 32-1.)
[5] The proposed Second Amended Complaint spells the supervisor's first name as "Antoino."   (*Id.* at ¶ 6.)   However, in Wilson's Complaint and Amended Complaint, the spelling is "Antonio."   (Doc. 1 at 2; Doc. 5 at 2.)

accused Wilson of seeking an adjustment for a friend or family member, which would be grounds for termination (Wilson denied any wrongdoing). (*Id.*) Wilson states that the reason she was fired by Sprint was because her supervisor provided false information to Sprint concerning the downward adjustment. (*Id.* ¶¶ 9, 12.) Wilson claims her supervisor told her, "I'm going to get you fired because you did not take me to Miami." (*Id.* ¶ 9.) More generally, Wilson alleges she was terminated due to "her opposition to and/or reporting of sexual harassment in employment." (*Id.* ¶ 11.) Wilson's proposed Second Amended Complaint asserts that her former supervisor's actions were motivated by "retaliatory animus" and that her former supervisor intended to cause an "adverse employment action." (*Id.* ¶ 12.)

## III.   Analysis

The proposed Second Amended Complaint contains the statement that Wilson has "met all administrative conditions precedent for filing this case under Title VII." (*Id.* ¶ 2.) More specifically, the proposed pleading alleges the following:

> [Wilson] filed her Equal Employment Opportunity Charge (E.E.O.C.) charge against the Defendant within one hundred eighty days (180) of the Defendant's last discriminatory act and has timely filed this complaint within 90 days of receiving her Notice of Right to Sue. (Attached as Ex. A-Charge Questionnaire and notes; Ex. B-Notice of Right to Sue).

(*Id.*) In its opposition to Wilson's corrected motion to file the proposed Second Amended Complaint, Sprint argues that Wilson failed to exhaust her administrative remedies prior to filing suit. (Doc. 37 at 1.) Thus, Sprint contends, the proposed Second Amended Complaint would be futile. (*Id.*)

## A.   Administrative Remedies

In order to bring a claim under Title VII, a plaintiff first needs to file a charge with the

- 4 -

EEOC.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).   A charge can be made either in person or by mail, and it must be in writing, signed and verified.   29 C.F.R. §§ 1601.8-.9 (2011).   For a charge to be verified, it must be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury."   *Id.* § 1601.3(a).

When making a charge to the EEOC, a person must include the (1) "full name, address and telephone number of the person making the charge," (2) "full name and address of the person against whom the charge is made," (3) a clear and concise statement of facts that comprise the alleged unlawful employment practices, (4) the approximate number of the employer's employees (if known), and (5) "whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws."   *Id.* § 1601.12(a)(1)-(5).   However, under § 1601.12(b), a writing can be considered "sufficient," and therefore a charge, when a person makes a statement "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."   *Id.* § 1601.12(b).   Further, a person can be allowed to amend "technical defects or omissions" within a charge, such as failing to verify the charge, or "to clarify or amplify allegations" made in the charge.   *Id.*   These amendments will "relate back to the date the charge was first received."   *Id.*

Wilson has attached to the proposed Second Amended Complaint a copy of an intake questionnaire (along with a 10 page statement) that was sent to the EEOC.[6]   (Doc. 32-1 at 12-26.)

---

[6] On page 1 of the Plaintiff's proposed Second Amended Complaint, the Plaintiff refers to the intake questionnaire as

Wilson also attached a copy of a "Notice of Right to Sue" letter from the EEOC.   (*Id.* at 28.)   For its part, Sprint has provided a copy of a "Notice of Charge of Discrimination" form sent to Sprint by the EEOC.   (Doc. 37-1 at 2.)   On the Notice provided to Sprint, in the "Enclosure(s)" section, the "Copy of Charge" box is left unchecked.[7]   (*Id.*)   Also, the Notice provided to Sprint indicates that a charge has been filed against Sprint and provides an EEOC Charge Number.   (*Id.*)   Further, there is a box checked on the Notice indicating that "[n]o action" was required by Sprint at that time.   (*Id.*)

Wilson has not attached an actual EEOC charge to the proposed Second Amended Complaint.   Although the proposed pleading does refer to a "Charge Questionnaire," Wilson has only attached an intake questionnaire.   (Doc. 32-1 at 2, 12-26.)   The issue, then, is whether the intake questionnaire Wilson submitted can be considered a charge that would suffice in order to pursue a claim under Title VII.

## B.  Intake Questionnaires

In *Wilkerson*, a verified intake questionnaire was considered sufficient to constitute a charge made to the EEOC.   *Wilkerson*, 270 F.3d at 1321.   The plaintiff in *Wilkerson* submitted an intake questionnaire, providing all the information required by EEOC regulations along with a seven page narrative.   *Id.* at 1316.   After completing the intake questionnaire provided by the EEOC, the plaintiff signed an italicized statement.   *Id.*   The italicized statement read: "I swear or affirm under penalty of perjury that the provided information is truthful and correct to the best of

the "Charge Questionnaire."   (Doc. 32-1 ¶ 2.)   However, the title on the attached copy sent to the EEOC is "Intake Questionnaire," not "Charge Questionnaire."   (*Id.* at 12-13.)

[7]   The Defendant received the Notice of Charge of Discrimination from the EEOC on June 2, 2010.   (Doc. 37-1 at 2.) The Defendant should have received a Notice of Charge of Discrimination within 10 days after the filing of a charge. 29 C.F.R. § 1601.14(a).   However, the Eleventh Circuit is "reluctant to condition an action for discrimination on the EEOC's performance of its duties."   *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (11th Cir. 2001) (citing *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994)).

my knowledge." *Id.* (record citation omitted).   The issue in the case was whether the intake

questionnaire constituted a timely charge under Title VII.   *Id.* at 1317.

After determining that the verified intake questionnaire constituted a charge, the court held

that the plaintiff filed a timely charge with the EEOC.   *Id.* at 1321.   The court discussed that,

although the EEOC regulations do "distinguish" between a charge and an intake questionnaire, the

difference is "not as sharp" as the defendant had argued.   *Id.* at 1318.   The plaintiff provided

enough information with the intake questionnaire to satisfy the definition of a charge under EEOC

regulations.   *Id.* at 1321.   Equally important, the sworn statement that the plaintiff signed on the

intake questionnaire "satisfie[d] the verification requirements of Title VII and EEOC regulations."

*Id.* at 1317.   The statement was signed under "penalty of perjury" and indicated to the filing party

that the information being provided to the EEOC was "legally significant."   *Id.* at 1320-21.

In discussing how an intake questionnaire can be considered a charge under Title VII, the

court in *Wilkerson* looked at whether a "reasonable person" would believe that the intake

questionnaire completed by the plaintiff displayed the "intent to activate the machinery of Title

VII" and the EEOC.   *Id.* at 1320.   The intake questionnaire that the plaintiff had completed

contained information that the court felt a "careful reader" could misinterpret, such as the time

period to file a charge, thereby suggesting to the reader that the questionnaire was in fact a charge.

*Id.* at 1320-21.   Another item the court felt could mislead a person included providing a Social

Security number that would help to separate charges among people who had similar names.   *Id.*

In addition, conversations the plaintiff had with the EEOC and the EEOC's response would

support the argument that the plaintiff had filed a charge.   *Id.* at 1321.   Therefore, under certain

circumstances, a verified intake questionnaire that contains information listed in 29 U.S.C. §

1601.12(a) can be considered a charge.   *Id.*

The more common view the Eleventh Circuit has taken regarding intake questionnaires is that, as a "general matter," these questionnaires are "not intended to function as a charge."[8] *Pijnenburg v. West Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001).   The plaintiff in *Pijnenburg* submitted an unsworn intake questionnaire to the EEOC, but never filed a timely verified charge.   *Id.*   The issue was whether an intake questionnaire could be considered a charge.   *Id.*   The court held that "intake questionnaires do not satisfy the statutory requirements of an administrative charge."   *Id.* at 1306.

The court in *Pijnenburg* reasoned that a charge, unlike an intake questionnaire, "serves two significant functions."   *Id.*   The first function is to notify the "employer that a discrimination charge has been lodged with the EEOC" and the second function is to initiate the "agency's investigation of the complaint."   *Id.*   The court reasoned that to "randomly treat" intake questionnaires as charges would "thwart" the two functions a charge serves.   *Id.*   In addition, the court emphasized that in order to "meet the requirements of Title VII, a charge has to be verified."

_____

[8] In a recent case involving an ADEA claim, the Supreme Court deferred to the EEOC in establishing a standard to use in determining what constitutes a charge.   *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 401-02 (2008).   The standard is as follows:   "In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee."   *Id.* at 402.   However, the Court prefaced that conclusion by stating that "employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination."   *Id.* at 393.

Applying the *Holowecki* standard to the instant case would not change the outcome.   In *Holowecki*, the Court embraced the EEOC's position that "not all documents that meet the minimal requirements of § 1626.6 are charges."   *Id.* at 397.   Section 1626.6 defines a charge as one that "shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s).   Charges received in person or by telephone shall be reduced to writing."   29 C.F.R. § 1626.6 (2011).   Therefore, there is no verification requirement under the ADEA-based regulations at issue in *Holowecki*.

However, the EEOC regulations applicable to Title VII claims do require verification.   29 C.F.R. § 1601.9 (2011).   Since Wilson's intake questionnaire is not verified, it would not meet the minimal requirements of an EEOC charge under Title VII.   Therefore, Wilson's intake questionnaire fails to satisfy the first *Holowecki* prong that a filing must contain "information required by the regulations."   *Holowecki*, 552 U.S. at 402.

*Id.* at 1307.   Therefore, as a "general matter," unverified intake questionnaires are not considered charges.   *Id.* at 1305.[9]

### C.  Submitting a Charge Without an Oath

A letter sent to the EEOC that "was not under oath or affirmation," and which the plaintiff never attempted to verify later through amendment, could not be considered a charge.   *Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir. 2001) (per curiam). The Eleventh Circuit, faced with an issue of first impression, followed other circuits in holding that 42 U.S.C. § 2000e-5(b) "mandates that charges be made under oath or affirmation."[10]   *Id.*   By filing suit after receiving a right to sue letter but without having submitted a verified charge, the plaintiff failed to complete all conditions precedent.   *Id.* at 906-07.

The Supreme Court has upheld an EEOC regulation allowing the "relation back of an oath omitted from an original filing" where the EEOC did not "call for any response" from the employer until verification.   *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 115 (2002).   The plaintiff in *Edelman* faxed a letter without an oath or affirmation to the EEOC.   *Edelman*, 535 U.S. at 109.   The EEOC sent the plaintiff a Form 5 Charge of Discrimination, which the plaintiff verified and returned after the applicable filing period had passed.   *Id.* at 109-10.   Since the Form 5 was returned late, the plaintiff argued that the initial letter faxed to the EEOC constituted a charge and that the verified Form 5 should relate back to the faxed letter.   *Id.* at 110.   The issue in *Edelman* concerned "the validity of an EEOC regulation permitting an otherwise timely filer to

---

[9] *Holowecki* appears to undercut certain aspects of *Pijnenburg*.   However, due the Supreme Court's qualifying language about particular statutory schemes, *Holowecki*'s application in the Title VII context is unclear.   In any event, resolution of the instant case largely turns on the absence of verification, rather than whether in the abstract an intake questionnaire can be considered an EEOC charge.

[10] 42 U.S.C. § 2000e-5(b) states that, "Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."   42 U.S.C. § 2000e-5(b) (2011).

verify a charge after the time for filing has expired."   *Id.* at 109.

The Court held that "the EEOC's relation-back regulation [was] an unassailable interpretation of § 706" of Title VII.   *Id.* at 118.   Since the EEOC had previously allowed later verification to relate back to the initial charge, and Congress had yet to alter that process in Title VII, the Supreme Court reasoned that there was congressional approval for the relation back rule. *Id.* at 116-18.   The Court interpreted the two relevant statutes (42 U.S.C. § 2000e-5(b) and 42 U.S.C. § 2000e-(5)(e)(1)) as imposing two separate requirements.   *Id.* at 112-13.   According to the Court, the requirement of a time frame to file a charge is in place to "encourage" a person to file "before [a claim] gets stale," while the verification requirement exists to protect employers from frivolous claims.   *Id.*   Therefore, a charge and a verification do not necessarily have to be completed at the same time.   *Id.*   However, the oath must be submitted prior to the EEOC requesting the employer to respond to the charge.   *Id.* at 113.

### D.  Rule Application

Wilson's proposed Second Amended Complaint fails to *plausibly* allege that "all administrative conditions precedent" have been met.   (Doc. 32-1 ¶ 2.)   Although referenced as a "Charge Questionnaire," the document actually attached to the proposed Second Amended Complaint is titled "Intake Questionnaire."   (*Id.* ¶ 2, 13.)   It is thus necessary to decide whether an intake questionnaire can be considered a charge in order to determine whether Sprint is correct in stating that it would be futile to allow the proposed Second Amended Complaint.   (Doc. 37 at 1.)

### 1.  Can Wilson's Intake Questionnaire be Considered a Charge?

Similar to the intake questionnaire in *Wilkerson*, the intake questionnaire submitted by

Wilson could be confused in some respects with an EEOC charge.   *Wilkerson*, 270 F.3d at

1320-21.   On the intake questionnaire Wilson submitted to the EEOC, she checked a box that

contained, in part, the following statement: "I want to file a charge of discrimination, and I

authorize the EEOC to look into the discrimination I described above."[11]   (Doc. 32-1 at 16.)   In

addition, the Privacy Statement located at the end of the intake questionnaire reads, in part: "[T]his

questionnaire may serve as a charge if it meets the elements of a charge."   (*Id.*)   Arguably, a

"reasonable person" could see how these statements might lead Wilson to believe that she had filed

a charge.   *Wilkerson*, 270 F.3d at 1320-21.   Also, the intake questionnaire arguably is

"sufficiently precise to identify the parties, and to describe generally the action or practices

complained of."   29 C.F.R. § 1601.12(b) (2011).

The instructions on Wilson's intake questionnaire were also similar to the instructions

located on the plaintiff's intake questionnaire in *Wilkerson*.   (Doc. 32-1 at 13); *Wilkerson*, 270

F.3d at 1320 (11th Cir. 2001).   For example, instructions located on the form filled out by the

plaintiff in *Wilkerson* stated that, "A charge of employment discrimination must be filed with the

EEOC within *180 days* of the date of the alleged discriminatory action taken against you."   *Id.*

(record citation omitted).   Similarly, the instructions located on the top of the intake questionnaire

Wilson completed contained the following statement: "REMEMBER, a charge of employment

discrimination must be filed within the time limits imposed by law, generally within 180 days or in

some places 300 days of the alleged discrimination."   (Doc. 32-1 at 13.)

However, there are two critical and dispositive differences between Wilson's intake

---

[11]  The rest of the statement reads: "I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.   I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination."   (Doc. 32-1 at 16.)

questionnaire and the one in *Wilkerson*.   First, the letter attached to Wilson's questionnaire states

that "[f]illing out and bringing us or sending us this questionnaire does not mean that you have

filed a charge."   (Doc. 32-1 at 12.)   Second, the intake questionnaire was not verified.   (*Id.* at

16.)   Those two factors clearly distinguish it from the *Wilkerson* case, where there was no such

statement on the front of that intake questionnaire and where the intake questionnaire contained a

sworn statement to be signed.[12]   *Wilkerson*, 270 F.3d at 1316, 1321.   The court in *Wilkerson*

stressed the importance of having the intake questionnaire verified; by agreeing to the statement, it

indicated to the person that the information provided had legal "significance."   *Id.* at 1321.   From

the face of the intake questionnaire attached to the proposed Second Amended Complaint, it does

not appear that Wilson verified her intake questionnaire. (Doc. 32-1 at 16.)

Furthermore, unlike the plaintiff in *Wilkerson*, the proposed Second Amended Complaint

does not allege that Wilson encountered any exceptional circumstances during the EEOC

process.[13]   Since *Wilkerson* appears to be more of an exception rather than the norm, the situation

in the instant case is more analogous to the circumstances in *Pijnenburg*.   Like the plaintiff in

*Pijnenburg*, Wilson filed an unsworn intake questionnaire with the EEOC.   *Pijnenburg*, 255 F.3d

at 1305; (Doc. 32-1 at 12-26.)   The lack of verification on Wilson's intake questionnaire is fatal

---

[12] A letter attached to the intake questionnaire in *Wilkerson* contained a statement that was unclear as to whether the form could be considered a charge.   The letter, after notifying the person that EEOC could choose not to pursue the case, stated that, "YOU MAY STILL FILE A CHARGE WITH US."   *Wilkerson*, 270 F.3d at 1321, Appendix A. The court noted that it was "unclear precisely what [the plaintiff] could have understood by reading" the letter and stressed that nowhere did it say that the "questionnaire is not a charge."   *Id.*

[13] In *Bost v. Federal Express Corp.*, 372 F.3d 1233, 1240 (11th Cir. 2004), the Eleventh Circuit listed more succinctly three factors the *Wilkerson* court considered to determine whether "the intake questionnaire satisfied the requirements of an EEOC charge."   Those three factors were: (1) "[T]he communication between the plaintiff and the EEOC," (2) "the EEOC intake questionnaire form itself," and (3) "the response by the EEOC to the completed questionnaire." *Bost*, 372 F.3d at 1240.   The court in *Bost* felt that the plaintiff in *Wilkerson* had presented "exceptional circumstances" that allowed the court in *Wilkerson*, after applying those factors, to determine that the intake questionnaire was a charge.   *Id.*

under Eleventh Circuit precedent. As the court stated in *Pijnenburg*, the "law is clear" that a charge

needs to be verified.   *Pijnenburg*, 255 F.3d at 1307.

The instant case is distinguishable from *Pijnenburg*, though, in that the EEOC sent a

"Notice of Charge of Discrimination" to Sprint.   (Doc. 37-1 at 2.)   By sending the notice to

Sprint, the EEOC performed a function – notification – that the court in *Pijnenburg* considered to

be accomplished only through a charge.   *Pijnenburg*, 255 F.3d at 1306.   Comparing the instant

case to *Wilkerson*, this would likely be the only incident in the instant case that the *Bost* court

would consider an "exceptional circumstance[]."[14]   *Bost v. Fed. Express Corp.*, 372 F.3d 1233,

1240-41 (11th Cir. 2004).   However, as was stated in *Wilkerson*, the "EEOC's treatment of the

questionnaire is relevant" but "not necessarily conclusive."   *Wilkerson*, 270 F.3d at 1321.

The Eleventh Circuit seems hesitant to accept intake questionnaires as charges.

*Pijnenburg*, 255 F.3d at 1305-06.   Further, the Eleventh Circuit is clear that a charge needs to be

verified.   *Id.* at 1307.   In the proposed Second Amended Complaint, Wilson cites only to an

unverified intake questionnaire.   (Doc. 32-1 at 12-26.)   Under these circumstances, the unsworn

intake questionnaire cannot be considered a valid EEOC charge.   Accordingly, the proposed

Second Amended Complaint, which relies on the unsworn intake questionnaire to satisfy

conditions precedent, is futile.

---

[14] This situation would fall under the analysis of the third factor listed in *Bost*.   *Id.* at 1240.   As applied to the instant case, the first *Bost* factor is weaker in comparison to the communication in *Wilkerson*.   Wilson never alleges that she spoke with anyone at the EEOC regarding the intake questionnaire.   Further, there is no allegation that the EEOC provided "misleading" information (as was the case in *Wilkerson*) to Wilson that would lead her to believe that she had filed a charge with the EEOC.   *Id.* at 1241.   The second factor is also weaker here than it was in *Wilkerson*.   In *Wilkerson*, the court noted that nowhere did the letter say it was "not a charge."   *Wilkerson*, 270 at 1321.   In the instant case, the letter contained a statement reading: "Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge."   (Doc. 32-1 at 12.)   On that basis, this case is distinguishable from *Wilkerson*.

**2.    Can the Plaintiff now Amend the Intake Questionnaire to Cure This Deficiency?**

Since Wilson has already filed suit, it appears that she would not be able to verify the intake questionnaire now and have it relate back to that initial submission date.   Similar to the plaintiff in *Vason*, Wilson failed to complete all conditions precedent when she filed a complaint against Sprint without having a verified charge.   *Vason*, 240 F.3d at 906-07.   Also, Wilson's case does not appear to be strengthened because she has a right to sue letter, as the plaintiff in *Vason* had also received a right to sue letter.[15]   *Id.* at 907.

Based on *Edelman*, Wilson might have been allowed to amend the intake questionnaire during the administrative proceeding since the EEOC did not ask for a response from Sprint. *Edelman*, 535 U.S. at 115; Doc. 37-1 at 2.   On the "Notice of Charge of Discrimination" provided by Sprint, the EEOC checked a box that stated, "No action is required by you at this time."[16] (Doc. 37-1 at 2.)   However, since the proposed Second Amended Complaint does not state Wilson tried to amend the intake questionnaire during the EEOC proceeding and Wilson has already filed suit, amendment is now foreclosed.

### IV.   Conclusion

Based on the foregoing, it is ORDERED as follows:

1.   Plaintiff Loukisha Wilson's Corrected Motion to Amend Complaint (Doc. 32), filed May 11, 2011, is DENIED insofar as it seeks leave to file Wilson's proposed Second Amended Complaint.

2.   Wilson is granted leave, on or before July 25, 2011, to file an amended complaint that

---

[15]  The Fourth Circuit has held that it is "reasonable" to conclude that, once a right to sue letter has been issued, "there is no longer a charge pending before the EEOC which is capable of being amended."   *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994).

[16]  Whether the EEOC later informed Sprint that any action was required is not mentioned either by Wilson or Sprint.

*plausibly* alleges that she filed a charge of discrimination with the EEOC as a condition precedent to bringing this lawsuit, if she can do so consistent with the requirements of Fed. R. Civ. P. 11.

3. In light of the Court granting Wilson leave to amend, Sprint's Motion to Dismiss Complaint (Doc. 13), filed on February 23, 2011, is DENIED without prejudice to its refiling, if appropriate.

4. The Clerk shall correct the Defendant's name on the docket sheet to Sprint/United Management Company.   Counsel shall use this name in all future filings.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 8, 2011.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party